IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUAN CARLOS BLANCO AYALA,   )
    Plaintiff,                )
                              )
v.                            )   Case No. 1:18-cv-1012
                              )
UNITED STATES OF AMERICA,     )
    Defendant.                )
                              )

## MEMORANDUM OPINION

Plaintiff, a United States citizen born in El Salvador, brings this action seeking to recover damages for the Department of Homeland Security's ("DHS") decision to arrest, detain, and remove plaintiff based on an erroneous determination in 2004 that plaintiff was not entitled to derivative citizenship. At issue are defendant's motions (i) to dismiss for lack of subject matter jurisdiction and (ii) to dismiss for failure to state a claim. Because the DHS officials' conduct that plaintiff challenges in this case falls within the discretionary function exception of the Federal Tort Claims Act ("FTCA"),[1] this action must be dismissed for lack of subject matter jurisdiction.

I.[2]

Plaintiff was born in El Salvador on January 20, 1978. According to the Complaint, plaintiff first entered the United States at age two or three and was granted lawful permanent residence in the United States on or about September 1, 1987. Plaintiff's parents divorced in 1983,

---

[1] 28 U.S.C. §§ 2671 *et seq.*

[2] The Fourth Circuit has explained that when the defendant challenges the factual basis for subject matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Accordingly, the facts recited herein are derived from the facts alleged in the Complaint and the exhibits submitted by the parties to supplement the Complaint's factual allegations.

1

but the divorce decree did not address or decide which parent would have legal or physical custody of plaintiff. On June 8, 1995, plaintiff's father became a naturalized citizen of the United States. At the time of his father's naturalization, plaintiff was seventeen years old and was residing with his father in Washington, D.C. Plaintiff's father had actual, uncontested custody of plaintiff at the time of plaintiff's father's naturalization. Accordingly, by operation of then-applicable Immigration and Nationality Act § 321(a),[3] plaintiff automatically derived United States citizenship on June 8, 1995 by virtue of his father's naturalization.[4] Yet, plaintiff did not receive a certificate of citizenship or any other proof of his citizenship at that time.

In February 2004, plaintiff left the United States to visit El Salvador. When plaintiff returned to the United States on February 28, 2004 via John F. Kennedy International Airport in New York City, plaintiff was questioned about his immigration status by a United States Customs and Border Protection ("CBP") officer. Plaintiff told the CBP officer that he was a lawful permanent resident, that he lived with his father in Washington, DC, and that his father was a U.S. citizen. Plaintiff also asked the CBP officer to investigate whether plaintiff was a United States citizen. CBP allowed plaintiff to enter the United States but directed him to report to CBP at Dulles International Airport because it appeared that plaintiff had been convicted of four criminal offenses, including two controlled substance offenses. Plaintiff subsequently reported to CBP at Dulles International Airport.

---

[3] INA § 321(a) was enacted October 5, 1978 by Pub. L. 95-417, § 5, 92 Stat. 917 and applied from October 5, 1978 to February 26, 2001. It was repealed effective February 27, 2001 by the Child Citizenship Act of 2000, § 103, Pub. L. No. 106–395, 114 Stat. 1631.

[4] Then-applicable INA § 321(a) provided that: "[a] child born outside of the United States of alien parents . . . becomes a citizen of the United States upon . . . [t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents." When the parents' legal separation is not accompanied by a grant of custody over the child, the parent having "actual uncontested custody" is to be regarded as having "legal custody" for purposes of determining the child's eligibility for derivative citizenship. *See Matter of M-*, 3 I&N Dec. 850, 856 (BIA 1950). The government does not dispute that plaintiff satisfied the conditions for derivative citizenship under this statute on June 8, 1995.

On April 26, 2004, CBP officers began investigating whether plaintiff possessed derivative United States citizenship from his father's naturalization as a United States citizen. In the course of the investigation, CBP had in its possession information reflecting that at the time of his father's naturalization, (i) plaintiff was a minor, (ii) plaintiff resided with his father, and (iii) plaintiff's parents had agreed that plaintiff would reside with his father. Nonetheless, CBP and DHS officials determined that plaintiff was not a derivative citizen of the United States.

During a check-in with CBP on or about August 12, 2004, CBP told plaintiff he was not a United States citizen and detained him in an immigration detention center in Virginia. Immigration officials searched plaintiff multiple times while he was detained. Thereafter, United States Immigration and Customs Enforcement ("ICE") served plaintiff with a Notice to Appear ("NTA"), which commenced removal proceedings against plaintiff in Immigration Court in Arlington, Virginia. The NTA informed plaintiff that ICE alleged (i) that plaintiff was not a citizen of the United States, (ii) that plaintiff was convicted of four criminal offenses, including two controlled substance offenses, (iii) and that plaintiff was subject to removal under 8 U.S.C. § 1182(a)(2)(A)(i)(II) (controlled substance offenses), (a)(2)(C) (illicit trafficker in any controlled substance), and (a)(2)(A)(i)(I) (crimes involving moral turpitude). Plaintiff remained detained, but was represented by counsel during his removal proceedings.

During his removal proceedings, plaintiff, by counsel, conceded that he was not a United States citizen, despite the fact that he was provided a full opportunity to argue that he had previously obtained derivative United States citizenship. Based on plaintiff's admission, the Immigration Court held that plaintiff was subject to removal pursuant to the charges in the NTA. Plaintiff was ordered removed on September 29, 2004, and plaintiff did not notice an appeal of

that order. Immigration officials executed the removal order and removed Plaintiff to El Salvador on or about December 6, 2004.

Plaintiff subsequently returned to the United States in or around 2005. Then, on or about November 20, 2015, ICE officers took plaintiff into custody and detained him at a detention center in Virginia after plaintiff's prior removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5). Plaintiff retained new counsel, who presented plaintiff's claim of derivative citizenship based on his father's naturalization to ICE on April 4, 2016. That same day, ICE released plaintiff from physical custody through an Order of Supervision. Plaintiff, by his new counsel, subsequently persuaded federal officials of his derivative citizenship. Plaintiff was thus issued a United States passport and a certificate of United States citizenship, and his 2004 removal proceedings were terminated.

Based on these facts, plaintiff claims that the United States is liable pursuant to the FTCA for the following torts under Virginia law: assault, battery, false arrest, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. In essence, these claims allege that DHS officials erroneously determined in 2004 that plaintiff had not become a derivative citizen when his father was naturalized and that, as a result, DHS officials unlawfully arrested, detained, and removed plaintiff in 2004 and again unlawfully arrested and detained plaintiff in 2015 and 2016.

## II.

In its motion to dismiss for lack of subject matter jurisdiction, defendant argues that subject matter jurisdiction over plaintiff's claims is lacking pursuant to the discretionary function

exception to the FTCA's waiver of sovereign immunity.[5] As the Supreme Court has explained, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994). The FTCA waives the United States' sovereign immunity with respect to certain damages actions based on "the negligent or wrongful act[s] or omission[s]" of federal employees. 28 U.S.C. § 1346(b)(1). Yet importantly, the FTCA's waiver is limited by several exceptions, which, if applicable, preserve the United States' sovereign immunity from suit and deprive the district court of subject matter jurisdiction over the plaintiff's claims against the United States. *See Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

At issue here is the discretionary function exception, which provides that the FTCA's waiver of sovereign immunity does not extend to any claim against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Williams v. United States*, 50 F.3d 299, 309 (4th Cir. 1995). The discretionary function exception applies if two requirements are met; the government action at issue (i) must "involve[] an element of judgment or choice" (ii) that is "based on considerations of public policy." *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)). The Fourth Circuit has held

---

[5] In the motions to dismiss, defendant also argue that dismissal of plaintiff's claims is warranted because (i) the claims are covered by the "due care" exception to the FTCA's waiver of sovereign immunity, *see* 28 U.S.C. § 2680(a), (ii) Congress has deprived this Court of jurisdiction over the claims pursuant to 8 U.S.C. § 1252(g), (iii) jurisdiction is lacking under the "judicial immunity" principle, *see* 28 U.S.C. § 2674; *Coulibaly v. Chasanow*, 2015 WL 877786, at *3 (D. Md. Feb. 27, 2015), and (iv) the claims fail to state a claim upon which relief may be granted, *see* Rule 12(b)(6), Fed. R. Civ. P. Because the discretionary function exception alone demonstrates that subject matter is lacking with respect to plaintiff's claims, defendant's additional arguments brought pursuant to Rules 12(b)(1) and (b)(6), Fed. R. Civ. P, are neither reached nor decided here.

that "[p]laintiffs bear the burden of proving that the discretionary-function exception does not apply" to the challenged government conduct. *Indemnity Ins. Co. of North America v. United States*, 569 F.3d 175, 180 (4th Cir. 2009).

Before proceeding to apply these two requirements, it is important to identify the government conduct that is challenged by plaintiff's tort claims. A review of the Complaint reflects that plaintiff alleges that DHS officials negligently and erroneously determined in 2004 that plaintiff was ineligible for derivative citizenship and that this determination led to plaintiff's arrest, detention, and removal to El Salvador in 2004 and his arrest and detention during 2015 and 2016. *See* Compl. ¶ 43 ("DHS arrested, detained, and deported [plaintiff] based on a misunderstanding of citizenship law in 2004."); *id.* ¶ 49 ("DHS acted recklessly when the agency incorrectly determined that [plaintiff] was not a U.S. citizen, which subsequently led to his arrest, detention, and deportation to El Salvador."); *id.* ¶ 52 ("DHS breached its duty [to allow U.S. citizens like plaintiff to enter the United States freely] which was the cause in fact and proximate cause of [plaintiff's] arrests, detention, and deportation."); *id.* ¶ 54 ("DHS acted negligently when the agency incorrectly determined that [plaintiff] was not a U.S. citizen, which subsequently led to his arrest, detention, and deportation to El Salvador."). Thus, plaintiff's various tort claims, distilled to their essence, challenge DHS officials' determination in 2004 that plaintiff was ineligible for derivative United States citizenship and DHS's decision to detain and deport plaintiff based on that determination.

There is no doubt that the first requirement for application of the FTCA's discretionary exception function—*i.e.* that the conduct at issue involves an element of judgment or choice—is met here. The government conduct that plaintiff challenges here clearly involved the exercise of judgment and discretion by DHS officials. It is well-established that decisions by law enforcement

6

regarding whom to investigate, how to investigate, and whether to prosecute constitute discretionary activity by government officials. *See Medina*, 259 F.3d at 227; *Sabow v. United States*, 93 F.3d 1445, 1452 (9th Cir. 1996); *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986), *cert. denied*, 479 U.S. 849 (1986); *In re G–N–C*, Interim Dec. 3366, 1998 WL 646918 (BIA 1998) ("We recognize that the decision to institute deportation proceedings involves the exercise of prosecutorial discretion[.]"). Moreover, "there is no requirement that the decisions made by law enforcement officers during the investigation or prosecution of a case must be correct to be fall within the discretionary function exception." *Hodgson v. United States*, No. SA:13-CV-702, 2014 WL 4161777, at *11 (W.D. Tex. Aug. 19, 2014) (citing *Kelly v. United States*, 924 F.2d 355 (1st Cir. 1991)); *see also* 28 U.S.C. § 2680(a) (stating that the discretionary function exception applies "whether or not the discretion involved be abused"). As numerous courts have sensibly concluded, these principles demonstrate that immigration officials' decisions regarding (i) the manner in which to investigate a person's citizenship status, (ii) what conclusions to draw from the investigation, and (iii) whether to initiate removal proceedings as a result of the investigation, constitute discretionary conduct.[6] Accordingly, it is clear that DHS officials' determination that plaintiff had not obtained derivative United States citizenship and the resultant decision to take steps to initiate removal proceedings against plaintiff were decisions that "involve[d] an element of judgment or choice." *See Holbrook*, 673 F.3d at 345.

In response, plaintiff argues that even if DHS officials' investigative and prosecutorial activity constituted discretionary activity, DHS officials nonetheless lacked discretion to arrest and

---

[6] *See, e.g., Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203 (D. Idaho 2016), *aff'd*, 705 F. App'x 597 (9th Cir. 2017); *Tsolmon v. United States*, No. CIV.A. H-13-3434, 2015 WL 5093412, at *8 (S.D. Tex. Aug. 28, 2015), *aff'd*, 841 F.3d 378 (5th Cir. 2016); *Hodgson*, 2014 WL 4161777, at *11–12.

detain plaintiff pending removal because he was a United States citizen.[7] This argument fails for two reasons. First, as courts have sensibly concluded, in the context of applying the discretionary function exception, "the arrest, detention, and deportation of [a suspected alien] cannot be separated from the agents' investigation" of the suspected alien's citizenship status. *Arteaga-Ruiz v. United States*, 705 F. App'x 597, 598 (9th Cir. 2017). This is so because unless plaintiff alleges that DHS officials' arrest, detention and removal of plaintiff amounted to intentional misconduct, which is not the case here, plaintiff is essentially challenging such conduct on the ground that DHS officials negligently determined in the course of their investigation that plaintiff was a detainable, removable alien. *See De La Cruz-Flores v. United States*, No. SA-16-CV-707-RCL, 2017 WL 4276812, at *5 (W.D. Tex. Sept. 25, 2017); *Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1203–04 (D. Idaho 2016), *aff'd*, 705 F. App'x 597 (9th Cir. 2017); *Hodgson*, 2014 WL 4161777, at *11. Thus, DHS officials' arrest, detention, and removal of plaintiff constitute discretionary conduct because such actions "cannot be separated" from DHS officials' investigative activity and their determination that plaintiff was a detainable, removable alien. *See Arteaga-Ruiz*, 705 F. App'x at 598.

Second, even if DHS officials' arrest, detention and removal of plaintiff are analyzed separately from DHS officials' investigative activity, these actions nonetheless constitute discretionary conduct. As courts have recognized, the decision to arrest and detain a suspect necessarily involves the exercise of judgment by immigration officials to determine whether, based on the available information, the suspect is a detainable alien. *See Nguyen v. United States*, 65 F. App'x 509 at *2 (5th Cir. 2003); *Iracheta v. United States*, No. CV B:14-135, 2015 WL 13559948,

---

[7] *See Berkovitz*, 486 U.S. at 536 (holding that a government employee's conduct does not involve discretion where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and "the employee has no rightful option but to adhere to the directive").

8

at *9 (S.D. Tex. June 19, 2015). In pertinent part, 8 U.S.C. § 1357(a)(2) provides that an immigration official "shall have power . . . to arrest any alien in the United States, if he has *reason to believe* that the alien so arrested is in the United States in violation of any [immigration] law or regulation . . . ." As courts have recognized, this "reason to believe" standard clearly requires immigration officials to "evaluate the factual circumstances they encounter and make judgment calls about whether the evidence they have gives them 'reason to believe' a given person is detainable." *De La Cruz-Flores*, 2017 WL 4276812, at *4; *see Nguyen*, 65 F. App'x 509 at *2 (5th Cir. 2003); *Arteaga-Ruiz*, 164 F. Supp. 3d at 1203–04. Further, the pertinent regulations make clear that the arresting official must also exercise discretion in determining whether the person to be arrested is an alien. *See* 8 C.F.R. § 287.8(c)(2)(i) ("An arrest shall be made only when the designated immigration officer has *reason to believe* that the person to be arrested . . . is an alien illegally in the United States."); *see also Nguyen v. United States*, 65 F. App'x 509 at *2. Thus, DHS officials' arrest and detention of plaintiff constitute discretionary activity.

The necessity that immigration officials exercise judgment is no less evident in the context of removing an alien. It is well-settled that "[i]n deportation proceedings, evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the [petitioner] to prove citizenship." *Miranda v. Sessions*, 853 F.3d 69, 73 (1st Cir. 2017) (quoting *In re Rodriguez-Tejedor*, 23 I. & N. Dec. 153, 164 (BIA 2001)). This principle makes clear that immigration officials must exercise judgment to determine whether a person subject to removal has met his or her burden to prove he or she is a citizen. *See Arteaga-Ruiz*, 164 F. Supp. 3d at 1203. Accordingly, like DHS officials' investigative activity, the decision to arrest, detain, and remove plaintiff based on a judgment that plaintiff was a detainable, removable alien constituted discretionary conduct, even if DHS officials wrongly concluded that plaintiff was not a United States citizen.

Turning to the second requirement of the discretionary function exception—*i.e.* that the official's decision was based on considerations of public policy—the Fourth Circuit has held that "if a government employee has discretion under the first [discretionary function exception] prong," as is the case here, "it 'must be presumed' that his acts 'are grounded in policy when exercising that discretion.'" *Estate of Bernaldes v. United States*, 81 F.3d 428, 429 (4th Cir. 1996) (quoting *Gaubert*, 499 U.S. at 324). Further, as courts have acknowledged, immigration officials operate with limited resources and "must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens." *See, e.g.*, *Douglas v. United States.*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011). In addition, decisions concerning the detention and removal of aliens directly implicates issues of foreign policy that are committed to the discretion of the executive branch. *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2001). Thus, the government actions challenged by plaintiff in this case constitute discretionary decisions that are grounded in public policy, which satisfies the second requirement of the discretionary function exception.

In sum, the decisions made by DHS officials that plaintiff challenges here meet both requirements for the application of the discretionary function exception to the FTCA's waiver of sovereign immunity. Accordingly, the United States has not waived sovereign immunity with respect to plaintiff's tort claims, and plaintiff's FTCA action must therefore be dismissed for lack of subject matter jurisdiction.

Precisely this conclusion was reached by the Ninth Circuit in *Arteaga-Ruiz v. United States*, 705 F. App'x 597, 598 (9th Cir. 2017), which presents facts virtually identical to the facts of the instant case. There, the plaintiff, who had acquired derivative United States citizenship in 2001, was arrested, detained, and removed to Mexico by DHS officials in 2007 following the plaintiff's

conviction for a state law crime. *Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1199 (D. Idaho 2016), *aff'd*, 705 F. App'x 597 (9th Cir. 2017). The plaintiff in *Arteaga-Ruiz*, like plaintiff here, conceded in his removal proceeding that he was not a United States citizen and agreed that he was removable. *Id.* at 1199–1200. Then, after the plaintiff in *Arteaga-Ruiz* returned to the United States in 2010, he was advised by an immigration attorney that the plaintiff possessed derivative United States citizenship as of 2001. *Id.* at 1200. The *Arteaga-Ruiz* plaintiff thereafter initiated an action against the United States, including claims of negligence, false imprisonment, and intentional infliction of emotional distress, each of which was based on the plaintiff's arrest, detention, and removal in 2007. *Id.*

The district court first concluded that the *Arteaga-Ruiz* plaintiff's claims, which mirror the claims brought by plaintiff in the instant case, "all stem from ICE's allegedly negligent investigative activity concerning his immigration status, which led to his week-long detention and removal." *Id.* at 1202–03. According to the district court, this challenged government conduct met the first requirement of the discretionary function exception because "the ICE agents' conduct during their investigation of [the plaintiff]'s immigration status, the conclusions drawn from their investigation, and the decision to remove him, are generally considered discretionary conduct." *Id.* at 1203. The district court also held that this conduct met the second requirement of the discretionary function analysis because "[t]he ICE agents' discretionary conduct in investigating [the plaintiff]'s immigration status, analyzing the information received, and in deciding whether to issue an NTA charging [the plaintiff] were susceptible to policy analysis." *Id.* at 1204. Accordingly, the district court held that the *Arteaga-Ruiz* plaintiff's "negligence, false imprisonment, and intentional infliction of emotional distress claims are barred by the discretionary function exception to the FTCA's waiver of sovereign immunity." *Id.*

On appeal, the Ninth Circuit affirmed the district court's dismissal of the *Arteaga-Ruiz* plaintiff's tort claims. Specifically, the Ninth Circuit held (i) that the plaintiff's claims "turn on whether federal immigration agents negligently or wrongfully failed to discover that [the plaintiff] was a U.S. citizen before he was removed in 2007," and (ii) that these "claims are barred by the discretionary function exception because the manner in which the agents investigated [the plaintiff]'s eligibility for removal meets both" requirements of the discretionary function exception. *Arteaga-Ruiz*, 705 F. App'x at 598. Importantly, the Ninth Circuit also rejected the *Arteaga-Ruiz* plaintiff's argument that "the agents could not have been acting with discretion because they lacked the authority to arrest, detain, and deport a U.S. citizen" because, according to the Ninth Circuit, "the arrest, detention, and deportation of [the plaintiff] cannot be separated from the agents' investigation and their reliance on his admission of non-citizenship." *Id.*

In light of the close factual similarity between *Arteaga-Ruiz* and the instant case, the Ninth Circuit's reasoning in *Arteaga-Ruiz* is particularly instructive and thus provides further support for the conclusion reached here, namely that the discretionary function exception to the FTCA applies to DHS officials' determination in 2004 that plaintiff was ineligible for derivative United States citizenship and DHS's decision to detain and deport plaintiff based on that determination.[8]

---

[8] For additional factually apposite cases holding that the discretionary function exception applied to immigration official's investigation of person's citizenship and subsequent detention and removal of that person, *see Nguyen v. United States*, 65 F. App'x 509 at *2 (5th Cir. 2003); *Andrade v. Walters*, No. CV 18-0889-MWF (KSX), 2018 WL 6131595, at *4 (C.D. Cal. Oct. 23, 2018); *De La Cruz-Flores v. United States*, No. SA-16-CV-707-RCL, 2017 WL 4276812, at *4–6 (W.D. Tex. Sept. 25, 2017); *Appolon v. United States*, No. 16CV2275SJSMG, 2017 WL 3994925, at *16 (E.D.N.Y. Sept. 6, 2017), report and recommendation adopted, No. 16CV2275SJSMG, 2018 WL 461241 (E.D.N.Y. Jan. 18, 2018); *Tsolmon v. United States*, No. CIV.A. H-13-3434, 2015 WL 5093412, at *6–11 (S.D. Tex. Aug. 28, 2015), *aff'd*, 841 F.3d 378 (5th Cir. 2016); *Iracheta v. United States*, No. CV B:14-135, 2015 WL 13559948, at *9–10 (S.D. Tex. June 19, 2015); *Hodgson v. United States*, No. SA:13-CV-702, 2014 WL 4161777, at *9–12 (W.D. Tex. Aug. 19, 2014); *Douglas v. United States*, 796 F. Supp. 2d 1354, 1368–69 (M.D. Fla. 2011); *Bernardo v. United States*, No. CIV.A.3:02-CV-0974-N, 2004 WL 741287, at *3 (N.D. Tex. Apr. 5, 2004). *But see Watson v. United States*, 179 F. Supp. 3d 251, 271–73 (E.D.N.Y. 2016), *aff'd in part and rev'd in part on other grounds*, 865 F.3d 123 (2d Cir. 2017).

An appropriate order will issue.

Alexandria, Virginia
May 31, 2019

/s/
T. S. Ellis, III
United States District Judge